IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

Case No. 25-CV-03492 JRR

ANDREA DWYER, Plaintiff v.

MARYLAND DEPARTMENT OF HEALTH, et al

Defendants

HD
Rcv'd by: AV

Plaintiff's Response to Request to Motion to Dismiss

USDC- BALTIMORE
'26 MAR 31 PM2:20

**Background and Legal Fillings to date:**

Plaintiff was the Licensee of record, legally bound as responsible for compliance of the Skilled Facility (SF). Licensee is/was licensed by federal and state exam, as issued and managed by the Maryland state agency Board Examiners of Nursing Home Administrator (BENHA).

The courts are fact finders, with such in mind Plaintiff seeks first to afford fact finders the full and accurate facts on the record in legal filings to date in these matters.

The Plaintiff filed three complaints on May 08, 2020. Each compliant was exactly the same, one charging state agencies complaint # C-02-cv-000926 , the next against two employees (one having been terminated named here Defendant Cherry and one having not been an employee but a contractor with the state at Office of Health Care Quality (OHCQ) Mark Paugh) Complaint# C-02-cv-000924 and the final case as noted here Compliant# C-02-cv-000923. These complaints were filed simultaneously on a single day, not as could be erroneously assumed, in multiple failed attempts over time. The first complaint against the state was dismissed without prejudice allowing the Plaintiff to refile. Plaintiff elected not to refile in state court. The second, identified

two employees which may have been determined to sit legally in a different position with immunity. The complaint was not served by the Plaintiff's decision. This leaves the final complaint now in appellant court. Plaintiff on 3/25/2026 received the Appellant court ruling. The request to amend the compliant was denied, the appellant court makes clear it does not find statements of fact credible from the Plaintiff nor does the appellant court believe the statement of facts, even if they could be evidenced, strip the Defendants named in that case of their qualified immunity. EXIHIBT K:3: footnote, 2. K:10 footnote 15. This repeated rejection of such overt acts by the Defendants rejects the duties of their jobs. AA Court asked "*Now where --- why is it illegal for them to do what they're order to do under the law.*" The state circuit court misses the entirety of the SOD is evidenced on its face the error in accepting standards of care (a legal not medical term of which is negated by the very nature of a "novel" virus with not history of standard treatments) or personally formulated opinions are NOT regulatory or statutory requirements, representing a question Defendants were negligent, gross negligent or malicious. Instead, each state court holds up as does this AG here the "safeguards" are a defense against bad actors in government positions, offering no explanation as to the responsibility when SA investigators, SA executives, simply decide to defy their duty and willfully violates a citizen's rights as nothing more than a desire of public show of government force. The state court affords the Defendants an automatic deference, as healthcare workers and civil servants, Plaintiff would otherwise applaud. However, not all government employees can resist the abuse of power and authority.

Defendant David Cherry with no history of working for either MDH or OHCQ was hired to be the then Depuy Director of Federal Services at the Office of Health Care Quality in January of 2020. Defendant Cherry was suspended in Oct. of 2020 and released from his position in

November of 2020. Plaintiff will require discovery of Defendant Cherry's job description to detail the exact failures of his role and to allow the courts to determine what of his illicit action(s) were part of his "protected" job duties. Defendant Cherry intentionally misinformed the Centers for Medicare and Medicaid Services (CMS) regional office (RO), going as far as re-writing Plaintiff's report to fabricate information and fraudulently presented such as Plaintiff's communication of record. EXHIBIT B 1-3. Defendant Cherry committed this overt and fraudulent act to surrender fabricated documents/statements of the Plaintiff, "the report", to CMS RO in order to gain permission of entry to investigate the Licensee/SF and achieve citing a deficiency for immediate jeopardy (IJ). Defendant Cherry further informed, in public, to conceal the SA had entered under "multiple complaints". Defendant Nay, in OAH court records and testimony will show the SA entered on a single compliant to investigate, charge, and fine the Plaintiff/SF, the single compliant Defendant Cherry fabricated. EXHIBIT B4, B5, B6.

The state AG alleges there is nothing specific to Defendant Fran Phillips the then Deputy Director for Maryland Department of Health (MDH). This is evidenced in Defendant Phillips willingly and wantonly publishing failed survey findings which were in conflict with her own public statements. Defendant Phillips had repeatedly and publicly stated Covid was a respiratory transmitted virus prior to approving the charging documents, stating Plaintiff and SF had caused the transmission of Covid via contact precautions. Defendant Phillips knew it was clinically impossibly the SF's Covid outbreak was caused by "failed" contact precautions based on "observations" made by the SA investigators, much less observations more than 7 weeks after the outbreak occurred. Defendant Phillips unreasonably and unprecedentedly injected herself into a federal survey process and then knowingly affirmed and participated in the decision to distribute the charging documents, "the Plaintiff's failures caused deaths" based on transmission

of covid because of violations of contact precautions. Why was Defendant Philips' involved in the SFs federal licensure investigation? Such is not part of her job duties; she is not trained by CMS. Defendant Phillips was well aware her engagement was unprecedented, illegal and she proceeded fully conscience nonetheless. The many other documented unwarranted engagements by Defendant Phillips of a federal investigation of the Plaintiff/SF will likely only be made available by the courts in discovery. Defendant Phillips is the party in EXHIBIT E-1 working decisional to release the charging documents and notice of charging documents outside of known statutory and regulatory dictates to do otherwise. Such exhibit was only made available in June 2025 to Plaintiff via PIA, mixed among over 100 other non-material documents.

Defendant Nay was, at all times relevant, the then Executive Director of the Office of Health Care Quality, functioning within the Maryland Department of Health (MDH), under contract with CMS to perform licensure surveys for SFs in Maryland. As such Defendant Nay has received federal and state training in legal matters surrounding the requirements of investigating SFs. As such Defendant Nay and Defendant Cherry are, like the Licensee, bound legally to those statues, federal regulations and directives.

Plaintiff did not file a complaint against BENHA in district court. Plaintiff states again the BENHA made no investigation while repeatedly threatening such for more than three years (and repeatedly refusing Plaintiffs request to provide a defense to allegations made against her), such was a means of organized intimidation against the Plaintiff. It is readily documented the matter of potential sanctioning of Plaintiff's license was only halted when Plaintiff engaged legal counsel, and legal counsel challenged BENHA was violating Plaintiff's due process rights under the United States Constitution. Then and only then did the BENHA close the "investigation" as opposed to accept any statement from the Licensee. The complaint against the then BENHA

Executive Director was dismissed not by the court, it was the Plaintiff that requested the court release the ED as a Defendant. This is affirmed in the Appellant Court ruling.

**Standard of Review:**

Rule 12(b)(6) purpose is to determine legal sufficiency of a complaint. Plaintiff does not allege these Defendants were selected randomly from the tens of thousand of state employees, or the 1000s of MDH employees. Defendants Cherry, Nay and Phillips unlike the defendants' named in the state MTCA compliant, are in fact the agency heads, respondent superiors. Like the licensee, the liable party for decisions. The statements in the compliant must be accepted as fact. "In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." Fioretti v. Md. State Bd. of Dental Exam'rs, 351 Md. 66, 72 (1998)

The state AG argues Plaintiff has only made conclusionary statements simply reciting the legal elements. Forthwith the Plaintiff provides evidence of statements of facts. The Federal Rules of civil procedure 8(a)(2) requires that a pleading must contain a "*short and plain statement of the claim showing that the pleader is entitled to relief*". The AG appears to argue there is no relief, no legal concern, no question of law, no remedy available when in fact agents of the government act contrary of their job duties and clearly established laws intentionally causing harm to its citizenry. Where a fiduciary relationship exists, the party asserting fraud and concealment need not show affirmative concealment of the cause of action, because failure to speak when there is a duty to speak. *Hall v. De Saussure*, 41 Tenn. App. 572, 297 S.W.2d 81 (1956). Defendants take an oath to the US constitution; they have common law fiduciary principles they are bound by a duty to treat citizens fairly and avoid targeting citizens for retribution. The Defendants had

requirements to be honest, truthful, and forthright in their duties, they selected to dismiss such demands.

Tortious Interference with Business relations: Defendants Nay, Cherry and Phillips were well aware, by experience and history, the SF had a contract with CMS, a third party. Defendants were well aware the CMS contract requires a Licensed NHA (Licensee/Plaintiff) to manage the day-to-day operations as the liable party. Defendants were aware the Licensee would have an employment contract with the SF. In authoring knowingly false charges and conflating those charges to allege immediate jeopardy the Defendants did intend to maliciously interfere with the SF contracts/relationship with CMS and Plaintiffs employment contract/relationship with the SF. The Defendants' employment of intimidation, intentional and improper fraud, knowingly publishing and distributing false information, violating statutes and regulations to sabotage Plaintiff caused financial hardship to the SF and intentional reputational damage and financial hardship to the Plaintiff, such interference resulted in loss of employment with SF in 2022 as the Licensee of record. Plaintiff admittedly remained with the SF, under a less visible title, for a period of time; such resulted in a loss of income and retirement contributions for the Plaintiff. Defendants not only understood fully the likely consequences to Plaintiff of their actions they committed overt acts to conceal their intentionality.

Abuse of Process: As noted throughout the Plaintiff makes clear, here, Defendants Nay, Cherry and Phillips did initiate and orchestrate the entirety of the investigation and direct, manage and control the process not for any of the lawful purposes they are bound to under the color of law, instead with the intent to damage Licensee and SF. The willful misuse of process continues, the appellant court list the statutory task assigned to the OHCQ regarding nursing home oversight, EXHIBIT K-1, pg. 1. Para: 1. Plaintiff makes clear these Defendants worked collectively to

exploit the "nursing home survey process" as a means to their ends, charge "failures of compliance- resulting in deaths" was the headline they sought. A showing of political might and punishment. This 'scheme" was nothing less than a modern-day public flogging. Such acts are not within their duties under color of law. Defendants Nay, Cherry and Phillips did knowing use the survey process while abandoning all required safeguards, BENHA and the courts for the purpose to harass and intimidate the Plaintiff causing reputational; loss of professional memberships, and financial harm.

Conspiracy against Rights: A combination of two or more persons by an agreement or understanding to accomplish an unlawful act, or to use unlawful means to accomplish an act not in itself illegal, with resulting damage to the plaintiff. 42 U.S.C. § 1983: Requires that someone acting under color of state law violated federal rights. Such is often coupled, as here, with claims for malicious prosecution and violations of Article 24 of the Maryland Declaration of Rights.

The "safeguards" available to Licensee and investigations of SF's include required multiple level hierarchical review(s) be performed by OHCQ when "harm is alleged to have occurred to patients" and Civil Money Penalties (CMPs) imposed. These demands are made of the SA and are detailed and prescriptive. They are in place by design from CMS as safeguards. These safeguards required review and acceptance of an IJ charge by the following positions: SA Investigators, Chief Nursing Officer, Long Term Program Manager, and OHCQ Deputy Director of Federal Services (Defendant David Cherry) and the Executive Director (Defendant Nay). Defendants Nay and Cherry along with Defendant Phillips led the team to their desired outcome only by trampling the required safeguards of the investigation and ignoring fact in evidence. These statutory and regulatory "safeguards" are dictated as required of the Defendants as the approved agency executing on the states contract with CMS. Nothing gives Defendants the right

to dismiss processes/procedures required of their positions be exercised. This damaged the Plaintiff's good will in the community, past and current income and retirement funds, loss of paid membership in advocacy organizations, loss of managing a Five Star rated SF, such would ALL be foreseeable to Defendants.

The conspiratorial requirement(s) are evidenced by the willful repeated and overt disregard for "safeguards"; statutory safeguards, regulatory safeguards, contractual safeguards, clinical safeguards, evidenatry safeguards, U. S. and state Constitutional safeguards, safeguards of the court's rules of procedure and candor. Reasonable people would have ceased. Defendants cannot dismiss such safeguards are clearly established by CMS and Maryland statutes.

Malicious Prosecution: Defendants Nay, Cherry and Phillips were active decision makers in issuing charging documents which gave way to these legal proceedings. Initiation of proceedings that ended in the Plaintiff's favor were docketed in Charles County Circuit Court in Oct. 2022 The aforementioned Plaintiff's knew they had no probable cause, as Defendant Cherry and R. Cooper OHCQ employee themselves fabricated such reason to investigate and make an IJ finding. Defendant Cherry and then OHCQ employee R. Copper as Program Manager created the fabricated "report" to CMS. EXHIBIT B-4, B-5, B-6. Plaintiff's actual report, dated 4/16/2020 without deleted sections and information is available for comparison at Exhibit B-1, B-2, B-3. Defendant Nay and Phillips attempt to conceal is evidenced by writing the public facing charging documents EXHIBIT C-12 para 2 "*according to the facilities report submitted to the state agency on 4/17/2020*". Defendant Nay's affidavit conceals the reports dates EXHIBIT G-4:25. This is determined by cross examination at OAH to be knowingly not factual EXHIBIT O1-O3 308:9- 312:15. Defendants Nay and Cherry acted with malice and bad faith as evidenced

by fabricating probable cause in report to CMS EXHIBIT B6, B7, B8. Defendant Nay fabricating a confession EXHIBIT C-59 para.2.

Defendants Nay and Cherry falsified evidenatry documents EXHIBIT F2-F-6 (not produced by CDC until 6/3/2020 more than five weeks after the SA investigators exited the SF and yet entered into court records with a date 4-3-2020 evidenced at Exhibit A49:4 while exhibits in tiny print show the correct publishing date 6/3/2020 EXHIBITS F1,F7. This falsity was not even discovered until well after OAH.

The charging documents were grossly in error on initiation and as later affirmed by an OAH court. EXHIBIT A1-51.

The state AG acting at the "direction of the client" in Charles County Circuit Court did not simply turn a blind eye to the allegations_SA investigator Adam Sumey, committed perjury, instead the state AG in spite of evidence on the court record, stated the SA Investigator did not perjurer himself, "*The surveyor never said they had no system... that is not in documents anywhere*" EXHIBIT: I-1, pg. 22:12-19. Counsel for MDH goes further to alleviate the allegations of perjury against SA investigator by ignoring the charging documents on the record, and two courts' of testimony and affidavits by Defendant Nay and the SA Investigator A. Sumey. State AG states no one has ever alleged a confession of the Licensee as the reason for the charge and IJ charges, instead stating it is because and always has been the system is ineffective: EXHIBIT I-1, pg. 22:14-19, EXHIBIT I-2, pg. 23:1,2,8, EXHIBIT I-3, pg. 24:20,21, EXHIBIT I-4, pg. 26:24,25. EXHIBIT I-6, pg.26:24-25, EXHIBIT I-7, pg. 27:1

Again, changing the rationale of the charging documents to another new and non-regulatory or non-statutory requirement; the system was ineffective because we did not inform the physician of

R4 test results timely, this is erred also. All this to intentionally confuse the record further as to the necessary and material facts, while lacking the required candor with the court.

The named Defendants knew a citing of an IJ would result in investigation of a Licensee and making allegations of incompetence and public notice of referral to one's licensing board, without request and contrary to statuary and regulatory directive, creating shame and defamation would be known, to reasonable people, to cause a Licensee harm. The sustained effort to pursue charges against the licensee is not evidence of a legal process drawn to it natural conclusion, but the want of harm, the Licensee would surely have been charged by her own BENHA had the charges been sustained by the Charles County Circuit Court. Such harmed occurred to Plaintiff in loss of income, business relationships and memberships, opportunity to manage a Five Star SF, "listed" within BENHA as being cited an IJ, and reputational damage.

CMS mandates to not release charging documents without review by the Licensee and right to response for 14 days. EXHIBIT. C-12, first page fine print.

Defendant Nay concedes in OAH testimony she released the charging documents to the Washington Post. Defendant Cherry conceals in communication with Licensee the obvious, OHCQ did make the release to Washington Post without request. EXHIBIT C-5.

**42 U.S.C. 1983**

To make a filing of a 1983 two things must be affirmed first, the defendants were under the color of law (such is not in debate), and second a U.S. Constitutional Right was violated. In the Fourth Circuit there is the additional requirement such violation(s) committed by defendant must have been "clearly established" law..

First Amendment US Constitution Free Speech and Maryland Bill of Rights: Defendants Nay, Cherry and Phillips and their employees initiated investigation for the sole purpose to retaliate against Licensee for criticism of the state's governance and management of Covid cases in SFs. Plaintiff argues it is for these reasons and acts of voluntarily testing ALL patients, she was identified above 180 other Maryland facilities in known outbreak to be the only facility for four months, in which SA completed NO other SFs investigation or surveys, to be investigated for a Covid outbreak.

Fourteenth Amendment US Constitution Due Process – Maryland Bills of Rights Violations:

There is no-probable cause to investigate the facility, such is fabricated by Defendant Cherry did falsify a document from Licensee, changing the date of receipt, adding Licenses name and falsified date after each comment, changing comments and removing sections of reply from Licensee and identifying the Licensee as incompetent and unavailable for the sole purpose to provide to CMS RO to obtain the necessary permission to gain entry into the SF to charge the Licensee with an IJ deficiency of federal and state regulations. EXHIBIT B 1-9. Such acts are initiated for the end goal that such charging documents would be publicly posted to shame and defame the Licensee.

In affidavit, signed less than 30 days before court 11/2020, Defendant Nay concedes investigators entered based on complaint filed against Licensee by Defendant Cherry and OHCQ employee R. Coope. But OAH in testimony Defendant Nay states it was the "complaint" R4 as the cause of the investigation, Licensee did not respond timely, an evidenced not fact. EXHIBIT G5:25,26. There were NO Other recorder complaints allowing entry prior to initiating the investigation on 4/20 and 4/21 when investigators entered.

Defendants Nay and Phillips did without request and in defiance of statutory laws and CMS directive to not release charging documents. The release included the pubic referral of Licensee to MFCU and her licensing board BENHA. The story ran from Maryland to Montana to Texas making its way into legal journals and medical review articles.

Defendant Nay attempts to sustain charges against SF under F770 by means of manufactured confession of Licensee to "an SA" more than 3 months after authoring initial charging of the IJ template which contains no "confession" EXHIBIT D-1 the publicly released charging documents of May 2020 EXHIBIT C-16-20 emphasis added to C-20 para. 1, the revised charging documents of June 2020 EXHIBIT C-41-43 emphasis C-41 paragraph 5, not until the July 2020 EXHIBIT C-59 para. 2 does the sole reason for the failures causing immediate jeopardy become the Licensee confessed to knowingly receiving 146 labs with no means of tracking them, managing or acting on them.

In July 2020 Defendant Nay has the SA remove a low-level deficiency for medical records, to conceal the SA investigators initial allegation; the DN not the Licensee stated they had no tracking system for labs. EXHIBIT C-21-24, para 4 (F842 Medical Records) emphasis C-24 para 2. EXHIBIT C-56 para 1 (removing F-842 without request or rationale). Which is equally erroneous and did not occur,

Defendant Nay in OAH testimony, becomes so zealous she testifies, she spoke with the Administrator herself. "I spoke with her herself ("the Administrator") and she stated SF had no means of tracking." EXHIBIT H-3, pg. 217: 12-18 (the statement can be heard on the audio file "the Administrator" herself". Otherwise, Defendant Nay remains with the more clandestine "a surveyor" said she said it" OAH transcripts EXHIBIT H-1 pg. 320: 4-9, pg. 321:13-16.

Defendant Nay at the DAB retracked having ever spoken to Licensee without explanation and

testified she never spoke to the Administrator or any employee at the SF, EXHIBIT.O3, 267:1,2 Defendant Nay makes clear the IJ charge is not for any of the reasons in the IJ or the first or second charging documents but now we have no racking system, but unlike OAH court the sole reason is not the License confession, but now a return to the charge of no tracking system. See EXHIBIT testimony H-1 pg. 320:25, pg. 321:7-9, EXHIBIT H-3 pg. 217:20-21.

Defendants Nay and Cherry, collectively, did add charge to intentionality and specifically identify Plaintiff's position as a failure of compliance by charging F835. Administration, only after Licensee appealed, as retaliation. So strained were the Defendants to add the additional charges against Plaintiff they again violate their training and statutory regulations, producing twisted and conflated charges of failures of cut and paste investigators observations, from 8 weeks earlier. ECF p. 36, pp 98 EXHIBIT C-43-51

Defendant Nay, Phillips, and Cherry, or at their direction on of the SA investigators or other required reviewers, did to create greater false light toward the Licensee, author and represent such as the Licensee authorship in publication the words "master list". A word forced by the SA investigators and then extrapolated and amplified for publication. CMS rejects the SA even suggesting the language of the Plan of Correction, but these SA investigators demanded language, "master list" intentionally. EXHIBIT C-20-21, C42,43, C-C-60.

Defendant Nay did withhold exonerating evidence. The SA investigators per CMS were required to use a specific formatted tool called the TIC, Defendant Nay never produced such. Both Defendants Nay and Cherry were responsible for the SA investigators use of required forms and tools demanded by CMS. ECF p. 9 pp 30, pg. 13, pp 44,

Plaintiff now offers evidence of the ever-changing charging documents (SOD) as they morph from specific failures of care for R4, to the sole reason for charging an IJ; the licensee's confession. (the IJ template) EXHIBIT D-1,2. The first SOD EXHIBIT C:16-21, the second SOD, EXHIBIT C:38-43. The final SOD EXHIBIT C:59 (and the one entered into APA court) publishing the Licensee confessed and removing the charges for medical records F842, EXHIBIT C:21-24, without explanation other than the obvious conflicting in assign the confession to the Plaintiff/License now removed that which originally identified the DN confessed to no tracking system, also not factual allegation of confession. EXHIBIT C-59. But to cause maximum damage at some point the "team" decided to more directly target the Licensee and Defendant Nay, approved.

The ALJ in the OAH court felt strongly enough about this accusation of the "licensee's confession" made by Defendant Nay to made clear as the adjudicator of credibility of facts, finds the plaintiff (denial) more credible than Defendant Nay. (EXHIBIT. A:33, pp. 3) Defendants Nay and Cherry were surely trained to know such revised charging documents of shifting "facts" violated known OHCQ policies, statutory and federal regulations and such was clearly established as law.

**Legal Argument**

The constitution does not bar suits by citizens against states and/or their agents holistically. The civil rights violations of the US and Maryland Constitution is what gives way for this complaint. The state of Maryland has allowed for civil litigants for violations of US Constitutional and state's rights, such is the matter in this compliant. The state recognizes and has formalized the means of distributing settlements and suits against the state, neither the state nor MDH is immune from accountability.

Maryland Board of Public Works- as posted: "Purpose: To notify State agencies that the Board of Public Works has delegated them authority to pay out of agency funds — without Board approval — settlements, judgments and counsel fees that do not exceed $10,000 in a particular case. This Advisory sets forth the conditions under which agencies may exercise that authority. This Advisory also sets forth procedures for presenting to the Board of Public Works proposed settlements, judgments, and counsel-fee payments that exceed $10,000 or that are to be paid from the State Insurance Trust Fund". https://bpw.maryland.gov/Pages/adv-2002-1.aspx Such evidence makes clear the state can and has been held liable and has prepared long standing policies for managing such events.

The AG insist these Defendants were acting in their official capacities, yet offers no specificity of which of the many illegal overt acts; their authored public statements, investigation tactics, or testimony was a job duty, instead just a formulaic demand of a defense of quasi-judicial immunity. Such demands are not afforded when Constitutional violations are the harm. Such defenses are invalid under Article 24 of the Maryland Declaration of Rights of the Maryland Constitution, and the US Constitution 14th Amendment

The Maryland Court of Special Appeals has stated that, "given the almost uniquely expansive reach of Maryland's constitutional tort remedy, where no official or local governmental immunity is possible ... we think it highly unlikely that Article 24 contains any exemption from liability for an unconstitutional pattern or practice." Prince Georges County, MD. V. Longtin

"The State is appropriately held answerable for the acts of its officers and employees because it can avoid such misconduct by adequate training and supervision and avoid its repetition by discharging or disciplining negligent or incompetent employees. Moreover, there is no reason why the deterrent value of holding the State answerable for an actionable assault by one of its

employees is warranted but the deterrent value of holding it liable for an employee's constitutional tort is not." Prince Georges County, MD. V. Longtin. The quoted rationale in Longtin highlights that Maryland's constitutional tort remedy is uniquely broad, specifically to allow for liability when an entity's own actions or policies lead to violations of fundamental rights.

To be clear had the Defendants performed their jobs to the actual statutory standards required of them, there would never have been the consideration to conclude an investigation as an IJ. Sure, the SA could have cited a missed (late) lab of 7 days as a violation at a D or E (at no harm). EXHIBIT. M. (scope and severity grid). Plaintiff would have mumbled about rigidity of the SA during a pandemic, written a Plan of Correction, and moved on. Such did not meet the Defendants want for shaming Plaintiff publications. The state AG demands which SA Defendants made which edits, which violations and when, but such information even with two court records intentionally remains shielded from Plaintiff as part of Defendants scheme to confuse the court record and avoid liability. The flagrant bypassing and manipulating clearly established laws, "safeguards" is evidence of conspiracy. It was the statutory requirement of Defendant Nay to have challenged or affirmed the SA investigators findings of observations and aligned such not with SOC as determined by her personal opinion, but with the regulatory requirements in COMAR or the federal regulations. It was not the role of Defendants Nay, Cherry and Phillips to encourage the required team members to conflate regulations, to fabricate evidence to conceal facts or any of the other illegal activities performed by the required investigative review team.

Hupp v. Cook, 931 F.3d 307, 325 (4th Cir. 2019) Given the disputes of the underlying historical facts, the supported assertion that Trooper Cook's statements in the criminal complaint were not entirely truthful, and the lack of undisputed evidence that otherwise would support a probable-

cause finding, we cannot find that Trooper Cook is entitled to qualified immunity on Hupp's malicious prosecution claim under section 1983."

Anne Arundel County Circuit and the Appellant court reject the Plaintiff has right to any discovery prior to affording the defendants summary dismal for qualified immunity. Such are not the limitations of district court. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In other words, qualified immunity shields federal and state officials from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

There is more than a whiff of mendacity. Zakhari, 85 F. 4th Circuit if there is presented evidence of a reasonable likelihood of vindictiveness, then the district court must allow discovery and an evidenatry hearing on the issue.

**Cleary Established Law: Defendants overt acts of due process violations are analogous to Brady Violations in clearly established law.**

Defendants as agents of the state knew they not could commit perjury in affidavits and court testimony. The Defendants knew they could not fraudulently cultivate a complaint from thin air to initiate an investigation. Defendants knew they could not mis-represent evidence gathered in an investigation solely for the want of bringing charges. The Defendants knew they could not manufacture a confession. Defendants knew they could not retaliate for Plaintiff's executing a right to proceed with a defense in legal proceedings. Defendants knew they could not withhold material evidence especially that which could be beneficial to the defense. Defendants knew when they materially changed dates of government documents and presented such to the court

such were violations of law. Defendants knew they had no right to edit to materially misrepresent Plaintiff's federally required POC for public display of false light. Defendants knew they had no right to immunity for acts of fraud and concealment. Defendants had no right to release charging documents to the WP and subsequently AP. The state AG would critique the complaint lacks specifics, Plaintiff understands the challenge of the vague, it has remained the concealing weapon of choice by Defendants. Plaintiff has detailed many of the exact corrupt actions of Defendant Cherry, Nay and Phillips, but again makes clear here, these Defendants are named because of their legal duty under color of law, by oath of office and job description including those required by CMS contracts, because the are in managerial positions. Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016) extends Brady Violations to the actions of other law enforcement officers, including investigating officers, but an investigating officer's failure to disclose exculpatory evidence does not constitute a Brady violation in the "absence" of bad faith.

Defendants Nay and Cherry would have known fabricating a confession is illegal and violates basic civil rights. Such is not evidence of mere negligence but instead clear and knowing violations analogous to Brady violations. In Cannon v. Village of Bald Head Island, 891 F.3d 489, 505 (4th Cir. 2018) "In sum, we conclude that under clearly established precedent, Peck made public false and stigmatizing charges regarding the grounds for the Officers' termination. This satisfies Sciolino's four prongs, thus demonstrating deprivation of the Officers' constitutionally cognizable liberty interests under clearly established law."

The state AG did lack candor with the courts in violation of Maryland Rule 19-303.3. In failing to correct a false statement of material fact or law previously made to the tribunal by the attorney and or make a false statement of fact or law to a tribunal, as repeatedly evidenced in the Plaintiffs compliant and again here in this brief. The state AG knew or should have known was false, in

defending their "client's" confessed perjury in DAB court, by repeatedly stating "no one ever said there was no master list ". Such "statement/confession" had become the sole reason for citing the IJ, such "statement/confession" had been the repeated argument in OAH court., as evidenced in the very case being argued. "*If an attorney has offered material evidence and comes to know of its falsity, the attorney shall take reasonable remedial measures*." *Mooney v. Holohan*, 294 U.S. 103, 112, where the Court ruled on what nondisclosure by a prosecutor violates due process: "It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which, in truth, is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured."

Defendant Nay is the only Defendant named that testified in court or submitted an affidavit, so allegations of perjury are limited to Defendant Nay. While Plaintiff can and will make evidence the SA investigators committed perjury, those SA investigators are not named in this complaint.

**Respondent Superior: Let the Master Speak: Defendants Nay, Cherry and Phillips**

Plaintiff takes enormous portion of limited pages to evidence statements of facts with specificity for fear anything less will result in another allegation of unsupported statements of facts, as frivolous claims, discarding Plaintiff as non-credible. Defendant Nay repeated to boast her unprecedented involvement in the investigation stages, such is not part of her routine task, but she makes known she was involved in looking up guidance, checking regulations etc. etc. EXHIBIT G-2:13,14 Nay affidavit. There is no denying Defendant Nay is "well in command" of managing these charging documents and everything before and after is with her support and engagement.

None of these acts taken singularly, identified when the concealment and fraud was known, called out as a civil rights violation of due process would have received anything less than summary dismissal as a technical error, a clerical mistake, without the evidenced showing of the collective repeated efforts would survive the good will and deference to qualified immunity, such is as Defendants Cherry, Nay and Philip predicated. It not only requires statements of facts, but the evidence. Defendants Nay and Phillips would have known such, as Defendant Nay was named in a complaint in 2017 similarly for what a then Licensee Plaintiff called a regulatory assault. Neiswanger v. MD DoH, https://www.mcknights.com/news/provider-sues-state-officials-for-regulatory-assault-against-its-facilities/.

In Owens v. Balt. City St.'s Attys Off., 767 F.3d 379, 401 (4th Cir. 2014) "In sum, our precedent unmistakably provides that, by 1988, a police officer violates clearly established constitutional law when he suppresses material exculpatory evidence in bad faith."

The self-dismemberment of each allegation in the IJ template as compared to the newly conflated allegation in the first SOD, second and third versions would have been obvious to Plaintiffs Cherry, Nay and Philips, as failures of the investigation to have properly identify and determined charges of an IJ.

Defendants authorized the knowingly erred statements as would have been available by their own investigation, a known not factual statement at the time Defendants Nay, Cherry and Phillips released t publicly "After *the test results for R4 were received, he she was still not relocated from the covid negative unit for four more days, and the risk of spread of the potentially fatal illness within a vulnerable population continued.*" EXHIBIT C-20, para. 2. A statement they later remove from the unpublicized version of the second and third SODs. Such knowledge R4 was not positive after the 14th almost a week before the SA investigators entered

would have been made known to them by the "compliant" of R4's son's statements in their own investigative files, my mother is recovered and no longer contagious and SHOULD NOT BE MOVED. EXHIBIT D-4,5 9. The knowingly erred statement of facts was meant to emotionally charge the reader, not to communicate actual knowledge of the findings of an investigation, such was never the desire of the leadership of Defendants. ECF p. 23, pp. 75. EXHIBIT. D 4, last paragraph written by R4 son. ECF p. 24, para 77 EXHIBIT C-20, 2, EXHIBIT L

Failed to follow polices list policies? Defendant Nay buoyed on the perjury from employee(s) investigator Adam Summey. Investigator Sumey also finally concedes in DAB hearings the Licensee never confessed to having no means to track incoming labs, or having no master list. ECF. EXHIBIT P1-P5. Investigator Summey remains resistant to being truthful, requiring counsel to become assertive and repeat questioning to get a final answer, Plaintiff offers the entirety of the conversation but the shortest in the brief here: Counsel Question, *Did anyone at the at the facility ever make the concession during the survey process?* Investigator Sumey Answer: *The concession being that there was no system to track labs*? Counsel*: that is correct.* Investigator Sumey Answer. *"NO*".

Defendant Nay and Investigator Beckley and Sumey conceded in court to many things they did not know a sampling of such exposes their documented lack of training: Symptom Based Recovery, COVID contagion period, Covid contagion method (Defendant Nay repeatedly unscientifically states pathogens are jumping off SF employees), universal source control, OSHA waived FIT testing. Plaintiff has run out of time and space to evidence such, but court records would reveal such as exact statements.

Defendants Nay, Cherry and Phillips never intended to send investigators into the SF for an actual infection control survey. This agency as managed by these three individuals took no

interest in performing any "investigations" of any OTHER SFs from 3/3/2020 when ALL SA investigators were sent home (quarantined) and placed on furlough shortly thereafter. OHCQ did not begin performing investigations again until forced by CMS under specific threat of funding cuts to Maryland as made publicly known by the then head of CMS Seema Verma, https://www.washingtonpost.com/local/maryland-nursing-home-inspections-trump/2020/08/05/1cdd8d6a-d777-11ea-930e-d88518c57dcc_story.html.

**Quasi- Judicial Immunity:**

Defendants Cherry and Phillips participated in no judicial proceedings and are therefore not entitled to protections reserved only for participants. The state AG demands quasi-judicial immunity for the Defendants, by presenting case law that is limited to a defense of defamation claim(s) for statements made in judicial hearings, all without evidence of malice. Plaintiff did not file in district court a claim for defamation. Nor, has Plaintiff alleged defamation for knowing perjured statements made in court or as part of the judicial process. Plaintiff has demonstrated by evidence, knowing defamatory statements were made public without request and published in the Washington Post before any judicial proceedings had even been made possible. Such unprecedented overt malice violates Plaintiff's due process. Defendants are not afforded a shield of quasi-judicial immunity from state or federal constitutional violations.

Defendants as state agents acting as investigators are not entitled to quasi- judicial immunity. Case law rejects even licensed legal professionals acting in an investigative capacity the right to such privilege. To include, "Fitzsimmons' statements to the media also are not entitled to absolute immunity. There was no common-law immunity for prosecutor's out-of-court statements to the press, and, under *Imbler,* such comments have no functional tie to the judicial process just

because they are made by a prosecutor." Buckley v. Fitzsimmons, 509 U.S. 259 (1993) Respondents are not entitled to quasi-judicial immunity. pp. 267-278.

Qualified immunity has come under attack in recent years and much evidence has been submitted that is does not achieve the goal of supporting good governance. Most qualified immunity cases come down to the reasonableness of actors, predominantly police officers acting in situations where potential personal harm to an officer requires split-second decisions. No such matter exists here; there was no requirements to issue charging documents with any immediacy (much less to the public). Defendants' have never even attempted such defense.

If Larsen made public statements that defamed Chinwuba or placed him in a false light, and if he did so in violation of a statute that required him to refrain from making such statements, then Larsen stepped outside any immunity or privilege protections that his public office afforded him. Such as noted in *Chinwuba v. Larsen*.

"We shall hold that, if Larsen did make statements to the press that he knew were subject to the confidentiality requirements of subsection 2-209(g), then as a matter of law, he did not do so in the performance of his public duties". Chinwuba v Larsen, No. 2298, Sept. Term, 2000.

Plaintiff notes Appellant court cited Maryland Board of Physicians V. Geier, this case was actually initially awarded a 2.5-million-dollar settlement and reversed by Mayland Appellant court the protection afforded under this Maryland case are specific to a licensing board's disciplinary committee members, often volunteers, an advisory committee. Further the claim was not of gross negligence or malice but instead a violation of HIPPA (Health Insurance Privacy and Portability Act). The Maryland Board of Physicians conceded the publication on the physician

disciplinary website was in error and immediately removed it. No such action of correction or goodwill has ever been displayed by these Defendants.

**Res Judicata**

Plaintiff did not make any civil rights violations claims in the MTCA complaint in state court, no claim of due process violations, no claim of violating free speech. This as evidenced by the Appellant Court of Mayland, there were no allegations of violations of constitutional protections made in the original complaints (2 ½ pages) and non were considered as matter of law, in either the Anne Arundel Circuit County decisions or in the Appellant court's decision. (EXHIBIT N, pg. para,) Therefore given the facts as evidence on this record Res Judicata does not apply to any of the charges by the plaintiff of constitutional violations. Plaintiff did not file compliant for Tortious Interference of Business Relations under the MTCA.

As noted, the claim against the state and the agencies under the MTCA were dismissed without prejudice Res Judicata is not applicable. Defendant Cherry had no compliant was pursued and therefore no matter adjudicated before the court existed. Claims in the MTCA which included Defendant Nay and Defendant Phillips were Malicious Use Process and Abuse of Process were prevented from review by the state court, as they facts showing in the 2 ½ pages of cause of action and Defendants were granted qualified immunity because there were no facts considered in state courts, only doubt as to the veracity of the facts. Res Judicata does not apply because the MTCA claims had no issues considered, so there can be no preclusion to such in this claim in District Court. In B&B Hardware, Inc. v. Hargis Industry, Inc issue preclusion prevents the relitigating of an issue of fact or law "when" that issue was actually litigated, such was not the case in the MTCA complaint. Res Judicata requires a review of facts, accordingly Plaintiff was dismissed for offering no facts.

**Statute of Limitations and Tolling:**

A malicious prosecution complaint cannot be initiated until the case has settled in the Plaintiff's favor, such was docketed on October 27, 2022, Exhibit: J-15. Plaintiff filed within three years of the SOL of the Circuit Cout docketing the required favorable ruling allowing filing of a compliant. Abuse of process could not be filed, because it could not be known until the process was concluded and the material reviewed. Conspiracy against rights no one expects to discover their government has attacked them intentionally, and Plaintiff could not have known without the full scope of multiple court records, transcripts, and review of 1000s of documents that the SA Defendants had worked collectively to target and intentionally harm Plaintiff, not the alternative they were simply neglect or grossly negligent. Tortious Interference with Business Relations in absence of malice or bad faith and evidence of such as acquired only via court testimony, court evidence and additional PIAs was not a claim the plaintiff could expect to make and satisfy the required elements in a compliant, for being summarily dismissed by the courts.

Such fraudulent acts by the Defendants have repeatedly been concealed from Plaintiff, and no single act could have supported the necessary element of "bad faith" required of the courts. It is the cumulation of the many acts of fraud and concealment, due process violations of state and federal civil rights, by Defendants Nay, Cherry and Phillips that evidence and thereby give way give way to this complaint. The Defendants ask their repeated evidenced of discovered fraud and concealment act as a defensive shield. Such is not in keeping with the demands of justice. Plaintiff has worked diligently to pursue the compliant. Plaintiff has shown in detail the specific actions the Defendants have taken to prevent Plaintiff's knowledge of their deceit and concealment. A great deal of the fabrication and perjury was not exposed until the review of the testimony from the DAB (Departmental Appeals Board 5/2022) hearing and the final testimony

and court order in Charles County Circuit Court order on 10/2022. Plaintiff could not have filed compliant without the evidence of two courts, plaintiff could not have presumed gross negligence or malice or the knowing of bad faith without an expectation of showing, by evidence. Plaintiff did not have access to the false copy of "the report" filed with CMS by Defendant Cherry or the email of the conference call until achieved via PIA, only shortly before the deadline to file this compliant in Oct. 2025.

Plaintiff when CEO, along with the BODs, made extraordinary efforts in hiring two lobbying firms to attempt a meeting with any of the following: OHCQ, MDH, the Governors office all request were summarily rejected as ex- parte. A defense all the SF's highly paid and well-trained lawyers agreed was defensive non-sense. Plaintiff has attempted numerous PIA request each is either met with, no response, delayed response, or a surrendering of information already known to the Plaintiff because most was submitted as standard reporting by the Licensee to the varied state agencies during the period in question.

Defendants suffer no harm by the advancing of this compliant, they have no claim to a delay harmed them, they have long known Plaintiff seeks accountability. Further I doubt Defendants would even know Plaintiff if she were standing in their own living room, they are utterly unconcerned as the matter is paid for and supported not with their efforts but the funds of the tax payers providing defense.

**Relief:**

The AG states there is no ask of relief, no cause of action. This is erroneous. Plaintiff offers ample evidence of the knowing and overt acts by Defendants of due process violations of both state and federal constitutional protections of free speech and procedural and substantive due

process, of malicious prosecution and abuse of the regulatory process, conspiracy against rights, and tortious interference with business relations committed by Defendants. As noted, initially and previously, the Plaintiff willingly leaves any monetary determination to a jury of her peers.

Plaintiff won the administrative hearings case and the Charles County Appeal in the Maryland APA. However, these same overt, covert, fraudulent and fabricated acts by Defendants caused an ALJ in federal proceedings, exact same allegations exact same facts presented, to determine in Departmental Appeal Board a case that will appear (as soon as one web searches as most prospective employers will for job applicants to day) Plaintiff and her almost decade employment at the SF https://www.hhs.gov/about/agencies/dab/decisions/alj-decisions/2024/alj-cr6495/index.html. The matter is appealed but this ruling is self- evident in its damage, routinely charging the Licensee failed leader of the SF. The findings of the AJ the Licensee "had no system to track labs" and failed to allow front line nurses to manage the collective process of universal testing. Unfortunately, the favorable opinion to Plaintiff, OAH decisions are not publicly posted. Admittedly such duality of law creates a special type of harm to Plaintiff which is rare and unlikely to be a routine. Plaintiff's harms are more than reputational and loss of good will, damage of lost income and future earnings, the loss of membership in her professional community, the loss of managing a Five Star SF, the forever listing at the BENHA of being cited and found guilty of an IJ finding, the loss of seats on professional boards and associations all have already and will continue to occur to Plaintiff/Licensee.

**Process of Service:**

All service has been effectuated or will be and the court will be notified as required of by April 2, 2026, as required

Maryland AG has accepted service was made for Defendants Cherry and Phillips, Proof of Service by Process Server was effectuated successfully for Defendant Nay and the Maryland State Treasury was served. MDH will be served on 4/1/2026. Last, opposing counsel at the State Attorney General will be served via accepted email.

**In Conclusion** The prayer for relief can only exist in District Court. The shield of Qualified Immunity should not only be challenged in the most extreme when the government ignores incarcerated rape victims, or when forced into a holding cell and denied basic rights for days, weeks, months or when left in one's own excrement for days, even if a convicted violent felon. These extreme versions should not set the bar for the minimum expectations of accountable governance and their agents that function with little to no regard for civil rights violations all in the name of just doing their jobs. Plaintiff's monetary harms are lowly, they do not justify the legal expense, by significant margin, but there appears no other means than via the courts to seek accountability for government abuse. Plaintiff wishes this were not so. However, Plaintiff will not because of her lowly financial statute ignore government abuse and overreach, performed solely to gain political capital by dolling out public retribution supported by the privilege of power and entitlement of employment to go without an attempt to challenge and make a demand for accountability.

In the Supreme Court, Arizona v. Youngblood requires that the officer have intentionally withheld the evidence for the purpose of depriving the plaintiff of the use of that evidence during his criminal trial. This is what is meant by 'bad faith.'" Arizona V. Youngblood 488 U.S. 51 (1988) .

Maryland Appellant Court makes note of the obvious shame Plaintiff still suffers given still current media coverage (still in production in June 2025) is such not the obvious human effect?

EXHIBIT L10-L12 Plaintiff hammers the fabricated report of Defendant Cherry not out of emotional shame but evidence of what a medical professionals would call Root Cause Analysis or the legal community would call no probable cause.

Respectfully submitted, sign under penalty of perjury statements made here and in the original compliant are facts, provable in court in which Plaintiff/Licensee is an able participant.

Andrea S. Dwyer Pro Se Litigant, 5815 Whipoorwill Dr., Deale, MD 20751

410-627-3676, beaunaz1510@gmail.com, Case 1:25-cv-03492-JRR

TABLE OF AUTHORITIES

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). … 17

Arizona V. Youngblood 488 U.S. 51 (1988) … 28

Buckley v. Fitzsimmons, 509 U.S. 259 (1993)…………………… 22,23

B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138 (2015)…….. 24

Cannon v. Village of Bald Head Island, 891 F.3d 489, 505 (4th Cir. 2018) …. 17

Chinwuba v. Larsen, 142 Md. App. 327, 355, 790 A.2d 83, 98. (2002) ...............23

Fioretti v. Md. State Bd. of Dental Exam'rs, 351 Md. 66, 72 (1998) ………………5

Greier v. Maryland Board of Physicians………………24

Hall v. De Saussure, 41 Tenn. App. 572, 297 S.W.2d 81 (1956) ……………… 5

Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016) ….. 18

Hupp v. Cook, 931 F.3d 307, 325 (4th Cir. 2019) ….. 16

*Mooney v. Holohan*, 294 U. S. 103, 112, (4th Circuit) …. 19

Owens v. Balt. City St.'s Att'ys Off., 767 F.3d 379, 401 (4th Cir. 2014) …. 20

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ..............17

Prince George's County v. Longtin, 419 Md. 450, 19 A.3d 859 (Md. 2011) .... 15,16

United States v. Zakhari, 85 F.4th 367, 384–85 (6th Cir. 2023) ..........17

Rules Federal Rule Civ. Pro. Maryland Rules of Procedures

42 U.S.C. § 1983....................15

Federal Rule 12(b)6..............5

Maryland RULE 19-303.3. Candor toward the Tribunal 3.3 ....... 18

Statutes 42 U.S.C. § 1983..........................7,10

U.S. Constitution 1st Amendment Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Constitution 14th Amendment All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Maryland Bills of Rights Article 24 That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land

Maryland Bills of Rights Article 40 That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege.

CERTIFICATE OF SERVICE I certify that, on this 31th of March 2026 the foregoing Plaintiff's Rebuttal to request to Dismiss, supporting memorandum, documents was served by, including the plaintiff. A copy of the foregoing was also sent by first class mail postage prepaid:

Maryland Department of Health 300 W. Preston Street, Suite 302 Baltimore, MD 21201
Marisa.Capone@maryland.gov

410-767-5060

Maryland State Treasury Goldstein Treasury Bldg., 80Calvert St. Annapolis MD 21401

Maryland DOH 201 W Preston St. Baltimore, MD 21202

Fran Phillip 2526 Carrollton Rd. Annapolis, MD 21403

David Cherry 3605 Kings Point Rd. Randallstown, MD 21133

Patricia Nay 2132 Beallsville Rd. Dickerson, MD 20842

__________________ 3/31/2026

Andrea S. Dwyer Pro Se Litigant, 5815 Whipoorwill Dr., Deale, MD 20751

410-627-3676, beaunaz1510@gmail.com, Case 1:25-cv-03492-JRR