**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**ANDREA DWYER,**

***Plaintiff*,**

**v.**

**MARYLAND DEPARTMENT OF HEALTH, *et al.*,**

***Defendants*.**

**Civil No.: 1:25-cv-03492-JRR**

**MEMORANDUM OPINION**

Pending now before the court is Defendants' Motion to Dismiss at ECF No. 13 (the "Motion").[1] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, Motion will be granted.

## I. BACKGROUND[2]

On October 23, 2025, Plaintiff Andrea Dwyer initiated this action against Defendants Maryland Department of Health ("MDH"),[3] David Cherry as former Deputy Director of Federal Services at the Office of Health Care Quality ("OHCQ"), an office of MDH, Patricia Nay as former

---

[1] Also pending is what the court construes as Plaintiff's Motion for Leave to File Surreply at ECF No. 24 (the "Surreply Motion"). The proposed surreply seeks to respond to an argument Defendants raised for the first time in reply—that Plaintiff's claims against Defendant Nay should be dismissed for failure to comport with Federal Rule of Civil Procedure 4(m). Because the court does not reach this argument in its analysis, the Surreply Motion will be denied as moot.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026).

[3] Plaintiff identifies this party as "State of Maryland, Maryland Department of Health." (ECF No. 1 at p. 1.) By Plaintiff's allegations, the court understands this party to be the Maryland Department of Health.

Executive Director of the OHCQ, and Fran Phillips[4] as former Deputy Director of MDH.[5] (ECF No. 1; the "Complaint.")

Plaintiff's allegations are difficult to follow. As best the court can discern, Plaintiff alleges that she was the Chief Executive Officer and Nursing Home Administrator of record for some unknown entity she refers to as the "Skilled Facility." (ECF No. 1 ¶ 1.) As such, she was seemingly responsible for "regulatory compliance" of the Skilled Facility. *Id.* In March of 2020, Plaintiff "sought access to testing for patients living in [skilled facilities]," based on the COVID-19 public health emergency. *Id.* ¶ 2. Plaintiff had already "expressed other concerns" to MDH, OHCQ, and the "Local Department of Health," regarding "shortcomings in managing" the public health emergency. *Id.* ¶ 3. As a result of Plaintiff's "criticisms" of MDH policies, MDH, OHCQ, and the Board of Examiners of Nursing Home Administrators[6] ("BENHA") (also within MDH) "retaliated against [Plaintiff]" by "entering the [Skilled Facility] without probable cause . . . , with the goal to seek and make a determination of [immediate jeopardy][7] for the sole-purpose of publicly publishing 'observations' as failures of regulatory compliance in an effort to silence

[4] The parties identify different spellings of this Defendant's name throughout their papers, with Defendants referring to "Philips" and "Phillips" (ECF No. 13-1 at pp. 1, 10, 14–15, 17), and Plaintiff referring to "Phillip" and "Philip," (ECF No. 1 at p. 1, ¶¶ 10, 23.) Based on the court's search, Phillips appears to be the correct spelling. The court refers to her accordingly.

[5] Plaintiff's Complaint does not identify whether her federal claims are brought against Individual Defendants in their official capacities, individual capacities, or both. (ECF No. 1.) Ordinarily, "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Based on Plaintiff's allegations, her intention is entirely unclear, as she identifies Individual Defendants by their (former) titles and does not appear to seek monetary damages, supporting an official capacity claim, but Individual Defendants are "former" employees, supporting an individual capacity claim. In any event, where Individual Defendants treat Plaintiff's federal claims as against them in both their official and individual capacities, the court assumes the same for purpose of ruling on the Motion.

[6] Plaintiff incorrectly identifies this office as the "Board of Nursing Home Examiners, Maryland State." (ECF No. 1 ¶ 6.)

[7] Plaintiff's reference to immediate jeopardy appears to refer to "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident." 42 C.F.R. § 488.301. *See* ECF No. 1 ¶ 29.

[Plaintiff's] free speech and retaliate for dissent against the government during a [public health emergency]." *Id.* ¶ 6.

On April 21, 2020, an unidentified State agency (seemingly OHCQ)[8] entered the unidentified Skilled Facility to initiate an investigation "for regulatory non-compliance that could be determined as an [immediate jeopardy]," based on "multiple complaints." (ECF No. 1 ¶ 9.) Plaintiff alleges the State agency had no record of complaints. *Id.* In May 2020, a number of State officials, including Defendants Nay and Phillips, met to review matters related to the State agency's charging documents against the Skilled Facility. *Id.* ¶ 10. These were released by MDH, specifically Defendant Nay, "without request by media and in defiance of directives by [congressional and state regulatory] mandates for required review and comment period by [Plaintiff] of 14 days prior to any public release." *Id.* ¶¶ 10–11. The State agency made changes to the charging documents in June and July of 2020. *Id.* ¶¶ 13–14. Plaintiff complains of multiple deficiencies in the State agency's investigation and improper conduct in the administrative action that followed. *See id.* ¶¶ 30–39. Plaintiff also alleges the State agency made and publicized multiple false statements about the Skilled Facility in the course of its investigation and resulting administrative action, and brought related administrative charges. *See id.* ¶¶ 53–92.

In December 2020, the State's Office of Administrative Hearings ("OAH") held an evidentiary hearing regarding the above-described allegations. (ECF No. 1 ¶ 16.) In April 2021, the Administrative Law Judge ("ALJ") issued a proposed decision in favor of the Skilled Facility,

---

[8] *See Dwyer v. Nay*, No. 750, Sept. term, 2024, 2026 WL 632546, at *1 (App. Ct. Md. Mar. 6, 2026) ("The Office of Health Care Quality is the agency within the Maryland Department of Health charged with monitoring the quality of care in Maryland's health care facilities and community-based programs, including nursing homes. . . . As best we understand it, OHCQ conducted a survey during April and May of 2020, determined that Sagepoint had failed to deal appropriately with the COVID-19 outbreak, issued a Notice of Deficiencies and a Statement of Deficiencies, and imposed civil fines.").

which the state appealed in September 2021. *Id.* The Circuit Court for Charles County, Maryland, affirmed the ALJ's decision in October 2022.[9] *Id.*

Plaintiff's Complaint raises six counts: violation of the First Amendment (Count I), violation of the Due Process Clauses of the Fifth and Fourteenth Amendments (Count II), malicious prosecution (Count III), abuse of process (Count IV), tortious interference with business relations (Count V), and conspiracy to violate civil rights (Count VI).[10] Cognizant of her *pro se* status, the court construes Counts I, II, III, IV, and VI to be brought under 42 U.S.C. § 1983, with Counts III, IV, and V also brought under Maryland common law. *See* ECF No. 1-1; *Ajenifuja v. Owusu*, No. CV DKC 23-1598, 2024 WL 1256259, at *3 n.3 (D. Md. Mar. 25, 2024), *aff'd,* No. 24-1363, 2024 WL 4707992 (4th Cir. Nov. 7, 2024) ("The vehicle for bringing a federal constitutional claim is under 42 U.S.C. § 1983."); *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (noting that § 1983 "is not itself a source of substantive rights" but instead provides "a method for vindicating federal rights elsewhere conferred") (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

Although not clearly delineated, Plaintiff appears to seek the following relief:

> A declaration that Defendants' actions violated [Plaintiff's] fifth amendment due process rights and order appropriate relief,
>
> A declaration that Defendants' actions violated [Plaintiff's] first amendment and order appropriate relief; [and]
>
> Grant such other relief as the Court may deem just and proper.

---

[9] Plaintiff appears to reference a separate case pending before the "Departmental Appeal Board," which is a part of the U.S. Department of Health and Human Services; however, it is unclear how that appeal relates to the underlying State investigation that is the focus of her allegations. (ECF No. 1 ¶ 17.)

[10] Plaintiff's opposition to the instant Motion makes reference to claims under the Maryland Declaration of Rights. (ECF No. 20.) Plaintiff's Complaint makes no such reference. The court therefore does not construe Plaintiff's Complaint as asserting such claims. In any event, even were the court to consider Plaintiff's Complaint to include claims for violation of the parallel Maryland Declaration of Rights articles, these claims would properly be subject to dismissal for the same reasons applicable to Plaintiff's federal law claims as set forth herein.

(ECF No. 1 ¶ 27.)[11]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that

[11] The Complaint does not include a demand for monetary relief; however, in her opposition to the Motion, Plaintiff suggests she does seek such relief, as she lists her "harms" to include "lost income and future earnings." ECF No. 20 at p. 27. To the extent Plaintiff does seek monetary damages, Defendant correctly notes that the claims against MDH and the Individual Defendants in their official capacities would be barred by operation of Eleventh Amendment immunity. *See Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 429–30, 430 n.5 (4th Cir. 2025) (on the relationship between Eleventh Amendment and state sovereign immunity). Under the Eleventh Amendment, states generally enjoy immunity from suit by private individuals in federal court unless the state has waived its immunity, or the immunity is abrogated by Congress. *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." (citations omitted)). This includes suit against state agencies. *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–102 (1984). "The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022). The three exceptions include where Congress abrogates the State's Eleventh Amendment immunity, where a plaintiff brings a suit "for prospective injunctive relief against state officials acting in violation of federal law," and where the State has waived its Eleventh Amendment immunity in a federal court. *Id.* (citations omitted). No exception is applicable here. With respect to abrogation, "Congress has not abrogated sovereign immunity for § 1983 suits." *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Nor does the court discern any other legal basis for Plaintiff's claims in connection with which Congress has abrogated the State's immunity. Further, Plaintiff does not seek prospective injunctive relief against a state official, so the *Ex parte Young* exception is inapplicable. *See MediGrow LLC v. Natalie M. Laprade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 373 (D. Md. 2020) ("The *Ex Parte Young* exception only permits actions against state officials, not the State itself or its instrumentalities."); *Jackson Creek*, 153 F.4th at 435. Finally, while the State has waived its sovereign immunity for certain types of claims raised in state court, *see, e.g.*, MD. CODE ANN., STATE GOV'T § 12-201(a), it has not waived its Eleventh Amendment immunity to suit in federal court; nor does Plaintiff argue any waiver in this action, and the court discerns none. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020).

'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint. The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). The court is also entitled to "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" as part of the "pleading for all purposes." *Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); and then citing FED. R. CIV. P. 10(c)). Finally, the court may also "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute

'adjudicative facts,'" meaning a fact "not subject to reasonable dispute because it," *inter alia*, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); FED. R. EVID. 201(b).

Both parties rely on documents outside the Complaint in their motions papers. Defendants rely on documents reflecting Plaintiff's prior action brought in state court to support their arguments that her instant action is barred by the principles of res judicata. Because the court does not reach Defendants' argument on this point, it does not consider Defendants' attached exhibits. Plaintiff similarly attaches a number of documents to her opposition, including what appear to be investigative documents and documents from the administrative and subsequent court proceedings. To the extent these documents are integral to her Complaint, matters of public record, or are otherwise subject to judicial notice because they reflect adjudicative facts not subject to reasonable dispute, such exhibits are certainly properly considered. But to the extent Plaintiff provides these materials to supplement her allegations, she may not do so in response to a Rule 12(b)(6) motion, and the court declines to consider them for such a purpose.[12] *See Baltimore Flips Israel 2020 LLC v. Yosef*, 769 F. Supp. 3d 370, 401 (D. Md. 2025) (noting "a plaintiff may not amend a complaint through a brief in opposition to a motion to dismiss"); *Nat'l Ass'n for Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349, 377 n.17 (D. Md. 2019) (noting an opposition to a motion to dismiss "is not a vehicle for amending a complaint"); *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 334 (D. Md. 2012) (noting "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a

---

[12] Notably, even when considering these exhibits, they do not bear on the court's determination that dismissal of Plaintiff's claims is appropriate for the reasons set forth herein.

motion to dismiss") (quoting *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991)).

## III. ANALYSIS[13]

### A. Plaintiff's 42 U.S.C. § 1983 Claims against MDH and Individual Defendants in their Official Capacities

Defendants first seek dismissal of Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1983—Counts I, II, III, IV, and VI—because MDH and individual Defendants sued in their official capacities are not "persons" subject to suit under § 1983. (ECF No. 13-1 at pp. 7–8.) Section 1983 permits a plaintiff to bring a claim against a "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983.

It is well-settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also id.* (explaining that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and is thus "no different from a suit against the State itself") (first citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985); and then citing *Kentucky v. Graham,* 473 U.S. 159, 165–166 (1985)). It is similarly beyond dispute that MDH, including the OHCQ within it, is "a principal department of the State." MD. CODE ANN., HEALTH-

---

[13] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (first quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

GEN. § 2-101; *Currie v. State*, 251 Md. App. 45, 66 n.12 (2021). Accordingly, Defendants (MDH and Individual Defendants in their official capacities) are not persons subject to suit under § 1983. The court will therefore grant the Motion and dismiss Plaintiff's Counts I, II, III, IV, and VI to the extent they are brought pursuant to 42 U.S.C. § 1983. Dismissal will be with prejudice as against the Maryland Department of Health and without prejudice as against Individual Defendants in their official capacities.[14]

**B. Counts II, III, IV, V, and VI: Due Process, Malicious Prosecution, Abuse of Process, Tortious Interference, and Conspiracy to Violate Civil Rights Claims**

Defendants also seek dismissal of Plaintiff's claims for failure to state a claim.[15] Indeed, Plaintiff's claims sounding in due process (and conspiracy to violate same), malicious prosecution, abuse of process, and tortious interference, all fail to state a plausible claim for the same reason—Plaintiff's allegations pertain to the Skilled Facility and not her personally. Plaintiff alleges that the State agency took action in violation of the Skilled Facility's due process, that the State agency maliciously prosecuted, and abused process as to, the Skilled Facility, and that the State agency interfered with the Skilled Facility's contracts with other agencies.[16]

---

[14] While the Supreme Court has recognized that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State,'" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted), that is not at issue here where Plaintiff does not seek injunctive relief. *See also Gottesman v. Bd. of Educ. of Montgomery Cnty., Maryland*, No. CV DKC 25-1682, 2026 WL 574975, at *10 (D. Md. Mar. 2, 2026), *reconsideration denied,* 2026 WL 1346173 (D. Md. May 14, 2026) ("[A] plaintiff may sue a state official for prospective injunctive relief in his official capacity but generally not his individual capacity.").

[15] Defendants assert in conclusory fashion that Plaintiff "fails to plead any of [the] elements" underlying a First Amendment violation. ECF No. 13-1 at p. 17. Defendants makes no effort to engage with Plaintiff's allegations in the Complaint that bear on same. The court declines to undertake this analysis where Defendants have failed to do so. In any event, the court finds Plaintiff's First Amendment claim properly subject to dismissal for the reasons set forth below.

[16] With respect to her tortious interference claim, Plaintiff alleges:

> The [State agency] did therefore tortiously interfere with business relations (count 5) in committing fraud by concealment and omissions and threatening with licensure actions while actively planning to defame the licensee in the Associate Press and Washington Post. The [State agency] knew the Licensee's relationship with [Centers for Medicare and Medicaid] under the contracts known as the Rules of Participation and OBRA require the Licensee as the liable Managing Party and

Plaintiff fails to allege how her individual due process rights were violated, how she individually was subject to malicious prosecution or abuse of process, or how she personally was harmed by the tortious interference. In failing to identify actions taken against her and/or harm resulting to her personally, she fails to state plausible claims. *See, e.g.*, *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (regarding procedural due process elements including, *inter alia*, plaintiff had a "constitutionally cognizable life, liberty, or property interest" which was deprived "by some form of state action"); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008) (regarding substantive due process elements including, *inter alia*, plaintiff had "property or a property interest" and deprivation of that interest by state action); *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019) (regarding § 1983 malicious prosecution elements including, *inter alia*, that defendant "caused . . . a seizure of the plaintiff pursuant to legal process unsupported by probable cause"); *Heron v. Strader*, 361 Md. 258, 264 (2000) (regarding Maryland common law malicious prosecution elements including, *inter alia*, "a criminal proceeding instituted or continued by the defendant against the plaintiff"); *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 37 (1997) (regarding Maryland common law malicious use of process elements including, *inter alia*, "that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action"); *Yuan v. Johns Hopkins Univ.*, 227 Md. App. 554, 581–82

> such attacks would cause harm. The [State agency] also is well aware such charging documents, especially publicized, would interfere with the Licensee business relationship with her licensing board, and the business community.

(ECF No. 1 ¶ 23.) While the court understands "Licensee" to refer to Plaintiff, the allegations fail to allege plausible tortious interference because it is not clear what business relationship Plaintiff was engaged in on her personal behalf or any related impact. Although the court does not consider the additional facts included in Plaintiff's opposition for purposes of determining the sufficiency of her Complaint under Rule 12(b)(6), *see supra,* Plaintiff's opposition appears to confirm that the alleged tortious interference stems from the Skilled Facility's contract with the Centers for Medicare & Medicaid Services. (ECF No. 20 at p. 6.)

(2016), *aff'd,* 452 Md. 436 (2017) (regarding Maryland common law tortious interference with business relations elements including, *inter alia*, "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss . . . .") (quoting *Kaser v. Fin. Prot. Mktg., Inc.,* 376 Md. 621, 628–29 (2003)).

By her Complaint, Plaintiff essentially seeks to vindicate the Skilled Facility's rights, without any purported basis entitling her to do so. Indeed, pursuant to the Local Rules of this court, "[a]ll parties other than individuals must be represented by counsel." Local Rule 101.1(a) (D. Md. 2025). This reflects the well-established rule that a corporate entity "may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) (quoting *Osborn v. President of Bank of United States,* 9 Wheat. 738, 829 (1824)). Based on the foregoing, the court discerns no basis on which Plaintiff may assert the interests of the Skilled Facility or seek remedies on its behalf.[17]

In summary, Plaintiff fails to plausibly allege due process (and related conspiracy), malicious prosecution, abuse of process, and tortious interference claims.[18] The court will dismiss these claims on this basis.[19]

**C. Counts: I, V, and VI: Claims Barred by the Statute of Limitations**

Defendants also argue that Plaintiff's claims are barred by the statute of limitations. Indeed, with regard to Plaintiff's First Amendment claim, conspiracy claim (to the extent it is based on the alleged First Amendment violations), and tortious interference claim,[20] the court

[17] Further, based on the foregoing, it would appear Plaintiff lacks standing to bring the claims identified above; however, inasmuch as Defendants mount no standing challenge, and the court has not *sua sponte* raised the issue for Plaintiff's response, the court will cabin its analysis to Defendants' arguments as to Plaintiff's failure to state a claim.

[18] To be clear, except as otherwise described herein, the court makes no findings as to whether these claims are otherwise plausibly alleged.

[19] Because the court dismisses on this basis, except where elsewhere discussed herein, the court declines to reach the remainder of Defendants' arguments in favor of dismissal of these claims.

[20] Of course, Plaintiff's tortious interference claim is subject to dismissal for the other reasons addressed herein.

agrees that these claims are time-barred, and that bar is apparent on the face of Plaintiff's Complaint.[21] Although "the defense of limitations is ordinarily not considered in the context of a motion to dismiss," a court "may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

With regard to Plaintiff's federal law claims under 42 U.S.C. § 1983, "§ 1983 does not contain a statute of limitations, so § 1983 claims are governed by 'the statute of limitations from the most analogous state-law cause of action.'" *Reid v. James Madison Univ.*, 90 F.4th 311, 318 (4th Cir. 2024) (quoting *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014)). Claims of a Maryland constitutional violation under the Maryland Declaration of Rights are subject to a three-year statute of limitations. MD. CODE ANN., CTS. & JUD. PROC. § 5-101; *Schoberg v. Schwartzman*, No. CV RDB-23-2852, 2025 WL 3640359, at *11 (D. Md. Dec. 16, 2025) (re Maryland Declaration of Rights claims). Plaintiff's claim for tortious interference with business relations is also subject to the three-year statute of limitations. MD. CODE ANN., CTS. & JUD. PROC. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."); *Sullivan v. Friedman*, No. CIV.A. GLR-14-1426, 2015 WL 5165915, at *5 (D. Md. Sept. 2, 2015) (re tortious interference).

---

[21] Defendants entirely fail to respond to Plaintiff's argument in opposition that her claims stemming from malicious prosecution and abuse of process did not accrue until the decision of the Circuit Court for Charles County, issued less than three years before she initiated this suit. *See, e.g.*, *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 392 (4th Cir. 2014) ("We determine when the statute of limitations on a plaintiff's § 1983 claim begins to run by looking to the common-law tort most analogous to the plaintiff's claim. In general, the limitations period for common law torts commences when the plaintiff knows or has reason to know of his injury."). Where Defendants fail entirely to respond to the argument, the court declines to analyze and decide the issue. The court therefore makes no findings as to the time bar on these claims.

"Although state law determines the length of the limitation period, accrual of § 1983 claims . . . is governed by federal law." *Reid v. James Madison Univ.*, 90 F.4th 311, 319 (4th Cir. 2024). "Maryland law is largely consistent with federal law on accrual." *Simon v. Gladstone*, No. 23-1431, 2025 WL 721317, at *5 (4th Cir. Mar. 6, 2025), *cert. denied,* 146 S. Ct. 331 (2025), *reh'g denied,* No. 25-244, 2026 WL 79877 (U.S. Jan. 12, 2026) (citing *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1018 (D. Md. 2019)). Under federal law, "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to [her] that reasonable inquiry will reveal [her] cause of action." *Reid v. James Madison Univ.*, 90 F.4th 311, 319 (4th Cir. 2024) (alterations in original) (quoting *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)). Thus, a § 1983 "cause of action accrues either when the plaintiff has knowledge of [her] claim or when [she] is put on notice—e.g., by the knowledge of the fact of injury and who caused it—to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Nasim*, 64 F.3d at 955.

"In Maryland, [courts] apply the 'discovery rule' in civil actions in determining when the statute of limitations begins to accrue on a claim." *Cain v. Midland Funding, LLC*, 475 Md. 4, 35 (2021) (citing *Poffenberger v. Risser*, 290 Md. 631 (1981)). "The discovery rule protects plaintiffs in a position 'where it was not reasonably possible to have obtained notice of the nature and cause of an injury . . . .'" *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 132 (2011)) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 956 (2000)). It provides that "a claim accrues when the plaintiff '*knew or reasonably should have known* of the wrong.'" *Caruso Builder Belle Oak, LLC v. Sullivan*, 489 Md. 346, 364 (2025) (emphasis in original) (quoting *Cain*, 475 Md. at 35). Simply put, under the discovery rule, "limitations begin to run when a claimant gains

knowledge sufficient to put [him] on inquiry." *Id.* (quoting *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445 (2000)).

The challenged conduct underlying Plaintiff's First Amendment and tortious interference claims (and related conspiracy claim) occurred well over three years before she initiated this action. Even crediting Plaintiff's assertion that she did not come to know of the violative actions until information was disclosed or learned of during the OAH administrative process, that process concluded in April 2021; and she did not file this action until October 23, 2025. For more than three years before she initiated suit, Plaintiff possessed sufficient facts about the harm done to her to put her on notice, *see Reid*, 90 F.4th at 319, *supra*, and she "knew or reasonably should have known of the wrong[s]" about which she complains here, *see Caruso*, 489 Md. at 364, *supra* (emphasis omitted).

Moreover, contrary to Plaintiff's contention, as to Maryland accrual, "[t]he beginning of limitations is not postponed until the end of an additional period deemed reasonable for making [an] investigation." *Caruso*, 489 Md. at 364 (quoting *Lumsden*, 358 Md. at 445). The statute of limitation "itself allows sufficient time—three years—for reasonably diligent inquiry and for making a decision as to whether to file suit." *Poole*, 423 Md. at 134 (quoting *O'Hara v. Kovens*, 305 Md. 280, 288 (1986)). This principle also applies to Plaintiff's §1983 claims. *See Nasim*, 64 F.3d at 955, *supra* (noting the claim accrues when plaintiff is put on notice to "make reasonable inquiry" into her claim).

Accordingly, despite accepting Plaintiff's allegations as true and broadly construing them in her favor, it is apparent on the face of her Complaint that Plaintiff's First Amendment claim (and related conspiracy claim) and tortious interference claim are time-barred.[22] The court will

[22] The court finds no basis to support equitable tolling here. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016) (identifying two-part test for equitable tolling of statute of limitations where plaintiff shows

therefore grant the Motion on this basis and dismiss these claims with prejudice. *See Foy v. Giant Food Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (concluding district court properly dismissed claims with prejudice as barred by limitations); *Prince v. JP Morgan Chase Bank N.A.*, No. CV SAG-25-01561, 2025 WL 2306242, at *3 (D. Md. Aug. 11, 2025) (dismissing plaintiff's time-barred claims with prejudice).

**D. Defendants Cherry and Phillips**

Defendants argue that Plaintiff's claims against Defendant Cherry and Phillips are subject to dismissal for an additional reason—because she alleges no facts about them in her Complaint. The court agrees. Plaintiff's only reference to Cherry in her Complaint is to identify him as the "then Deputy Director of Federal Services" at OHCA and to assert in conclusory fashion that he "actively conspire[d]" with Defendants Phillips and Nay "against the rights of [Plaintiff]." (ECF No. 1 ¶¶ 21, 23.) With regard to Defendant Phillips, Plaintiff alleges only that she "engaged in review" of the charging documents at issue, and includes the conclusory allegation of conspiracy noted above. (ECF No. 1 ¶ 20, 23.) Plaintiff's Complaint thus fails to offer factual allegations to support how Defendant Cherry or Phillips acted in some way to violate her federal constitutional rights,[23] *see Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under § 1983, however, the plaintiff must 'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'") (quoting *Wright v. Collins*, 766 F.2d

"(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing"); *Ademiluyi v. Maryland State Bd. of Elections*, 458 Md. 1, 31 (2018) ("In Maryland, [ ] it is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant held out any inducements not to file suit or indicated that limitations would not be pleaded.") (quoting *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 624 (1985)). To the extent Plaintiff's allegations concern efforts taken to conceal unlawful conduct, as explained above, the face of the Complaint is plain that Plaintiff was on the requisite notice of the conduct about which she complains more than three years prior to initiation of this action. The court does not find the alleged facts reasonably or plausibly support equitable tolling.

[23] For the reasons set forth above, to the extent these § 1983 claims were brought against Defendants Cherry and Phillips in their official capacities, they are not properly "persons" subject to suit where Plaintiff seeks no prospective relief.

841, 850 (4th Cir. 1985)), or Maryland common law. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that, in accordance with Rule 8, Plaintiff's pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (quoting *Twombly,* 550 U.S. at 555)).

Thus, Plaintiff's claims against Defendants Cherry and Phillips are also properly subject to dismissal on this basis. To the extent Plaintiff seeks to add new facts in her opposition, as discussed above, it is axiomatic that a plaintiff may not amend her complaint by way of opposition to a motion to dismiss. *See Baltimore Flips Israel 2020*, 769 F. Supp. 3d at 401; *Nat'l Ass'n for Advancement of Colored People*, 382 F. Supp. 3d at 377 n.17; *Whiting-Turner Contracting*, 912 F. Supp. 2d at 334, *supra*.

**E. Requested Relief**

Finally, as Defendants note, Plaintiff's Complaint fails to delineate her request for relief. (ECF No. 13-1 at p. 5.) Nonetheless, the court does observe, as noted above, that Plaintiff appears to seek a declaration that Defendants' actions violated her First Amendment rights and her Fifth Amendment due process rights. (ECF No. 1 ¶ 27.)

Pursuant to Federal Rule of Civil Procedure 8(a), a "pleading that states a claim for relief must contain," relevant here, "a demand for the relief sought." FED. R. CIV. P. 8(a)(3). "A complaint fails as a matter of law when it does not specify what relief the plaintiff seeks." *Cary v. Whitmer*, 734 F. Supp. 3d 630, 631 (E.D. Mich. 2024) (first citing *Akouala v. Key Bank*, No. 3:23-CV-432-CRS, 2023 WL 8263345, at *2 (W.D. Ky. Nov. 29, 2023); and then citing *DeBose v. Brown*, No. C 12-6169 SI (PR), 2013 WL 5402234, at *2 (N.D. Cal. Sept. 26, 2013)). Indeed,

where a pleading fails to include such a demand, district courts in this Circuit have repeatedly found the pleading subject to dismissal. *See, e.g.*, *Powell v. Bodiford*, No. CV 1:25-12699-SAL-SVH, 2025 WL 3503924, at *2 (D.S.C. Oct. 23, 2025), *report and recommendation adopted,* No. 1:25-CV-12699-SAL, 2025 WL 3502978 (D.S.C. Dec. 5, 2025) (noting plaintiff's complaint was "subject to summary dismissal for failure to meet the basis pleading requirements" where plaintiff "failed to indicate the relief he requests for the court to provide"); *Cobbs v. D. J. Highhouse-T954*, No. CV 6:16-812-TMC-KFM, 2016 WL 1567458, at *3 (D.S.C. Mar. 24, 2016), *report and recommendation adopted,* No. CV 6:16-812-TMC, 2016 WL 1557828 (D.S.C. Apr. 18, 2016) (noting where "plaintiff does not request any relief in the complaint, he fails to state a plausible claim against either defendant," and for the court to conclude plaintiff's rights had been violated but order no remedy would constitute an impermissible advisory opinion); *Covington v. Randolph Hosp., Inc.*, 147 F. Supp. 3d 399, 402 (M.D.N.C. 2015) (noting "even if the complaint clearly stated a claim upon which relief could be granted, its failure to request relief weighs in favor of dismissal" and collecting cases).

Accordingly, to the extent Plaintiff brings claims distinct from the alleged violation of her First and Fifth Amendment rights for which she does not seek any relief, such claims are properly subject to dismissal for failure set forth a request for relief in accordance with Rule 8(a)(3).

## IV. CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion will be granted.

September 15, 2026

/S/
Julie R. Rubin
United States District Judge